IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

DEERE & COMPANY, a Delaware )
corporation, ) C.A. No. N13C-07-330 JTV
 )
    Plaintiff, )
 )
  v. )
 )
EXELON GENERATION )
ACQUISITIONS, LLC, a Delaware )
limited liability company, )
 )
    Defendant. )

Submitted: July 24, 2014
Decided: November 10, 2014

Peter J. Walsh, Jr., Esq., and Matthew F. Davis, Esq., Potter, Anderson & Corroon, Wilmington, Delaware. Attorneys for Plaintiff.

Sean J. Bellew, Esq., Ballard Spahr, Wilmington, Delaware. Attorney for Defendant.

*Upon Consideration of Plaintiff's*
*Motion to Dismiss Defendant's Counterclaims*
**DENIED**

**VAUGHN, Judge**

*Deere v. Exelon*
C.A. No. N13C-07-330 JTV
November 10, 2014

## OPINION

The plaintiff, Deere & Co., filed a complaint against the defendant, Exelon Generation Acquisitions, LLC, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. The dispute arises out of an August 30, 2010 purchase agreement (the "Agreement"). Previously in the litigation, Exelon filed a Motion to Dismiss all three of Deere's claims under Superior Court Civil Rule 12(b)(6). The Court dismissed Deere's breach of the implied covenant of good faith and fair dealing and unjust enrichment claims, but allowed Deere's breach of contract claim to proceed.

In its answer, Exelon asserted two counterclaims; recoupment and unjust enrichment. Deere has filed a Motion to Dismiss both counterclaims under Rule 12(b)(6).

## FACTS

The facts are set forth in the Court's opinion concerning Exelon's Motion to Dismiss.[1] In 2010, Exelon purchased Deere's interest in specific wind generation projects and wind generation assets owned by Deere through subsidiaries. On August 30, 2010, the parties memorialized the terms of their contract in the Agreement. The Agreement identifies the Blissfield Wind Project as one of the wind generation projects that Exelon would acquire. The Blissfield Wind Project was described as "the wind project under development in Lenawee County, Michigan, by Blissfield

---

[1] *Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2014 WL 904251 (Del. Super. Mar. 7, 2014).

2

Wind Energy, LLC, with a nameplate capacity of 81 megawatts."[2] Section 2.6 of the Agreement provided for an earn-out to be paid to Deere when the Blissfield Wind Project "achieves Completion of Development and Commencement of Construction."

In connection with the Blissfield Wind Project, Deere represented that it reasonably believed that the material permits were obtainable in the ordinary course.[3] This representation is expressly qualified, however, by disclosures that Deere included in the Seller Disclosure Schedule.[4] In the Seller Disclosure Schedule, Deere

---

[2] Agreement, Section 1.1.

[3] Specifically Section 4.11(c)(iv) of the Agreement states:

As of the date hereof [August 30, 2010], except as set forth in Section 4.11(c)(iv) of the Seller Disclosure Schedule, [Deere] reasonably believes that all material Permits necessary for the development, construction, ownership, maintenance, use and/or operation fo the Michigan Wind Projects (including material Permits with respect to applicable zoning and land use Laws) can be obtained in the ordinary course. [Exelon] acknowledges that not all such Permits required for the Michigan Wind Projects are known as of the date of this Agreement.

[4] The Seller Disclosure Schedule states:

The Riga Township Planning Commission voted on August 2, 2010 to recommend to the Riga Township Board a 12-month moratorium on wind energy projects, which is scheduled to be considered by the Riga Township Board at its September 13, 2010 meeting. The moratorium, as currently proposed, would automatically expire upon approval of a wind energy zoning ordinance. If 15% of the registered voters in a Michigan township sign a petition requesting a referendum within 30 days after a zoning ordinance is enacted in such township, the zoning ordinance would become subject to a referendum vote at the next scheduled election. Based on the level of resistance to the Blissfield Wind Project in Riga township there is a possibility that a zoning ordinance permitting the project would be put to a referendum.

informed Exelon of the Riga Township Planning Committee's decision to impose a moratorium on wind energy projects and the potential obstacle that the moratorium could present in obtaining the necessary zoning approval. In Section 6.3 of the Agreement, Deere promised that before closing it would cause Deere Renewables to "conduct its business and operations in the ordinary course of business consistent with past practices and consistent with Prudent Industry Practices."

Deere's covenants and representations and warranties were subject to limiting provisions in the Agreement. Section 7.2 of the Agreement sets forth conditions to Exelon's obligations to close and states that the obligations of Exelon to "effect the Closing shall be subject to the satisfaction (or waiver, in whole or in part). . .of each of the following conditions." One of the conditions of the closing was that Deere preformed or complied with all obligations under the covenants, representations and warranties.[5] Additionally, the Agreement includes a survival clause which terminates the representations and warranties fifteen months after the closing date.[6] The transaction closed on December 9, 2010.

Following the close of the transaction, the Riga Township Board adopted changes to its zoning regulations that precluded the development of the Blissfield Wind Project. Ultimately, Exelon notified Deere that it was not commercially reasonable to continue development on the Blissfield Wind Project. Exelon acquired a different location and developed a wind project in Gratiot County, Michigan. A

---

[5] Agreement, Section 7.2.

[6] Agreement, Section 10.4.

power purchase agreement that was used in connection with the Blissfield Wind Project was amended and used in connection with the wind project in Gratiot County.

In its complaint, Deere asserted that the Blissfield Wind Project had simply been relocated to Gratiot County, and that Exelon was required to pay the earn-out for the Blissfield Wind Project.

In support of its recoupment counterclaim, Exelon alleges that Deere breached two representations, Section 4.11(c)(iv) and Section 6.3, in the Agreement and, that as a result of the breach, Exelon should be able to reduce any recovery by Deere. In its unjust enrichment counterclaim, Exelon claims that Deere will be unjustly enriched if it is permitted to recover the entire earn-out amount without an offset for substantial costs that Exelon allegedly incurred to relocate the Blissfield Wind Project to Gratiot County.

## STANDARD OF REVIEW

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[7] The court will limit its review of the motion to dismiss to the well-pleaded allegations in the complaint, but will draw all reasonable factual inferences in favor of the non-moving party.[8] In considering the defendant's motion to dismiss, the court must deny the motion unless the plaintiff could not

---

[7] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs, LLC*, 27 A.3d 531, 537 (Del. 2011).

[8] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

recover under any reasonably conceivable set of circumstances.[9] This "conceivability" pleading standard asks whether there is any, even a remote, possibility of recovery.[10]

A complaint, or counterclaim is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."[11] This statement is only required to give the defendant fair notice of a claim and is to be liberally construed.[12]

## CONTENTIONS

Deere contends that Exelon's recoupment claim cannot be a stand-alone claim and must be predicated on some legal basis; Exelon's recoupment claim is untimely and barred because it is brought outside the contractually agreed fifteen month survival period; that the closing date was December 9, 2010 and thus the survival term expired on March 9, 2012; that even if Exelon's recoupment claim related back to the time that Deere filed its complaint, it would still be untimely because the fifteen-month survival period expired before then; that the two underlying alleged breaches of the Agreement are contradicted by the underlying documents and cannot survive in the face of the plain terms of the Agreement; that Deere expressly disclosed to Exelon the resistence that the Blissfield Wind Project was facing; that

---

[9] *Cent. Mortg. Co.*, 27 A.3d at 536.

[10] *Id*. at 537.

[11] Superior Court Rule 8(a).

[12] *Sult v. Am. Sleep Medicine, Inc.*, 2011 WL 4688730, at *1 (Del. Super 2011).

any representations in Section 4.11(c)(iv) are expressly qualified by the contents of the Seller Disclosure Schedule; that Deere expressly carved out possible zoning ordinance issues for the Blissfield Wind Project in the Seller Disclosure Schedule; that Exelon has already conceded that Deere has satisfied its obligations under Section 6.3; that Deere has satisfied all of its preclosing affirmative obligations; that Exelon's recoupment claim is duplicative of its affirmative defense for recoupment; and that the Agreement is the proper measure of the parties' rights and acts to bar any unjust enrichment claim.

Exelon contends that recoupment is a defense aimed at reducing the amount of damages recoverable by the plaintiff if the plaintiff has not complied with cross obligations arising under the same contract; that to prevail on its recoupment claim Exelon must show that the recoupment claim arises out of the same transaction as the plaintiff's claim, has the same litigants and is purely a defensive set-off; that its recoupment claim meets the necessary requirements; that a recoupment defense survives so long as the plaintiff's claim, which arises under the same contract, survives; that the plaintiff's claim is not time barred; that Exelon easily meets the "reasonable conceivability" standard required under a motion to dismiss; that the recoupment defense is premised on two breaches of Deere's representations regarding the Blissfield Wind Project; that Deere's disclosures in the Seller Disclosure Schedule acknowledged only the possibility of a moratorium but did not nullify its representation that all material permits for Blissfield Wind Project could be obtained; that Deere knew Exelon could not obtain the material permits for the Blissfield Wind Project in Lenawee County; that it did not waive or acknowledge that Deere complied

7

with Section 6.3; that recoupment is a type of defensive counterclaim; that pleading recoupment as a counterclaim and as an affirmative defense does not require dismissal of the counterclaim; that Deere would be unjustly enriched if it is permitted to recover the earn-out without compensating Exelon for the money it expended in connection with the development of the wind project in Gratiot County; and that the Agreement does not govern Exelon's right to recoup expenses from Deere in developing a wind project in Gratiot County.

## DISCUSSION

The doctrine of recoupment is not a precisely defined one and has been minimally applied in Delaware and in other jurisdictions. Generally, "[r]ecoupment is a common-law equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff."[13] In order to assert a recoupment claim, the defendant must show that (1) the claim arises out of the same transaction or occurrence as the plaintiff's suit; (2) the claim is purely a defensive set-off and does not seek affirmative recovery; and (3) both the primary damage claim and the recoupment claim involve the same litigants.[14] Additionally, "to the extent that a valid recoupment claim is asserted defensively, it is not subject to statutes of limitation,"[15] and will be considered timely "so long as the main action

---

[13] *TIFD III-X LLC v. Fruehauf Production Co., L.L.C.*, 883 A.2d 854, 859 (Del. Ch. 2004).

[14] *Id.*

[15] *Id.* at 860.

itself is timely."[16]

Exelon's recoupment claim and Deere's suit arise out of the same Agreement and the same circumstances, i.e., the termination or relocation of the Blissfield Wind Project, involve the same parties and seek only a defensive set-off. Based on the minimal "conceivability" pleading standard, I conclude that Exelon sufficiently alleges a recoupment counterclaim.

Deere contends that Exelon's recoupment claim is time barred by the survival clause in the Agreement. The survival clause limitation in the Agreement may bar Exelon from affirmatively seeking damages. However, it does not bar Exelon from asserting a counterclaim for recoupment. The law in Delaware clearly states that recoupment is not barred or affected by a limitations period so long as the main action itself is timely.[17]

Deere also contends that Exelon cannot raise recoupment as both an affirmative defense and a counterclaim. I find nothing in the case law which forbids Exelon from raising recoupment as both a counterclaim and a defense. Delaware cases have recognized recoupment in both regards, but never has a court dismissed the counterclaim because the same theory was asserted as an affirmative defense.[18] Exelon has sufficiently satisfied the pleading requirements for the recoupment claim

---

[16] *PNC Bank, Delaware v. Turner,* 659 A.2d 222 (Del. Super. 1995).

[17] *Id*.

[18] *See TIFD III-X LLC,* 883 A.2d 854 (describing the doctrine of recoupment as either a counterclaim or affirmative defense).

9

to survive a motion to dismiss.

Deere also moves to dismiss Exelon's claim for unjust enrichment. Deere contends that Exelon's claim for unjust enrichment is barred because the Agreement governs the parties' relationship and the matter in dispute. Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[19] When an express, enforceable contract controls the parties' relationship, a claim for unjust enrichment is not available because the contract itself is the measure of the parties' rights.[20]

Deere relies upon *Deere v. Exelon*, this Court's March 7, 2014 opinion dismissing Deere's unjust enrichment claim because the Agreement governed the parties' relationship and the matter, the payment of the earn-out, in dispute.[21] Exelon's claim for unjust enrichment is substantially different from Deere's. In *Deere,* the matter in dispute was payment of the earn-out for completion of the Blissfield Wind Project.[22] Payment of the earn-out is expressly addressed by the parties in Section 2.6(a)(iii) in the Agreement.[23] Here, the matter in dispute, the offset of any recovery by the expense Exelon allegedly incurred to complete the wind

---

[19] *Kuroda*, 971 A.2d at 891.

[20] *Id*.

[21] Deere, 2014 WL 904251, at *5.

[22] *Id*.

[23] *Id*. at *1.

project in Gratiot County, is not addressed in the Agreement. The Agreement does not contain a provision addressing the parties' obligations in the event that the Blissfield Wind Project could not be developed in Lenawee County. I find that Exelon's unjust enrichment claim has sufficient merit to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Deere's Motion to Dismiss is ***denied***.


**IT IS SO ORDERED**.


          /s/ James T. Vaughn, Jr


cc: Prothonotary
   Order Distribution
   File