COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: March 21, 2017
Date Decided: May 23, 2017

Edward B. Micheletti, Esquire
Cliff C. Gardner, Esquire
Matthew P. Majarian
Skadden, Arps, Slate, Meagher
  & Flom LLP
920 North King Street
Wilmington, DE 19899

David E. Ross, Esquire
Eric D. Selden, Esquire
Nicholas D. Mozal, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

> RE: *United BioSource LLC v. Bracket Holding Corp.*
> Civil Action No. 12886-CB

Dear Counsel:

This letter constitutes the Court's decision on plaintiff United BioSource LLC's motion for summary judgment on its Verified Complaint for Specific Performance (the "Complaint") and defendant Bracket Holding Corp.'s motion to dismiss the Complaint. For the reasons explained below, plaintiff's motion for summary judgment is granted and defendant's motion to dismiss is denied.

## I.     Background

Plaintiff United BioSource LLC ("UBC") is a Delaware limited liability company with its primary place of business in Blue Bell, Pennsylvania. Its ultimate parent company is Express Scripts, Inc., a major healthcare company.

Defendant Bracket Holding Corp. ("Bracket") is a Delaware corporation with its headquarters in Wayne, Pennsylvania. Bracket provides scientific, technical and operational support to pharmaceutical firms in connection with clinical trials and other research.[1]

On July 12, 2013, UBC and Bracket entered into a Securities Purchase Agreement ("SPA"), pursuant to which Bracket purchased all "equity interests and ownership interests" in three subsidiaries of UBC (as defined in the SPA, the "Companies") and three subsidiaries of the Companies (as defined in the SPA, the "Company Subsidiaries").[2] One of the Company Subsidiaries that Bracket purchased as part of the transaction (the "Transaction") is P-Star Acquisition Co., Inc. ("P-Star").[3]

Section 2.6(e) of the SPA governs the handling of certain tax refunds relating to pre-closing periods that may be received after the Transaction's closing. It states, in relevant part, that:

> Except to the extent included as a current asset on the Final Statement pursuant to Section 2.5, any cash Tax refunds (or a credit in lieu of a cash refund) and interest paid thereon by a Governmental Authority received by the Buyer, any of the Companies or any of the Company Subsidiaries, or to which the Buyer, any of the Companies or any of the Company Subsidiaries become entitled, that relate to Pre-Closing Periods or the portion of the Straddle Period ending at the Effective

---

[1] Compl. ¶¶ 11-12.

[2] *Id.* ¶ 1 & Ex. 1, at 1, 4.

[3] *Id.* ¶ 20.

Time shall be for the account of Parent, and the Buyer shall pay over to Parent any such Tax refund and interest or the amount of any such credit within fifteen (15) days after receipt or entitlement thereto, net of (1) any reasonable costs associated with obtaining such refund, (2) any applicable withholding Taxes required to be withheld on such payment, and (3) any Taxes incurred in respect of the receipt or payment of such refund. . . . In the event the Buyer or Parent, as applicable fails to pay to the other party any such amounts due under this Section 2.6(e) within the time period specified, the Buyer or Parent, as applicable, shall pay, in addition to the amounts due, interest on such amount, compounded annually, calculated using a 365 day year from the date of receipt or entitlement thereto through the date prior to the date of payment at the prime lending rate of Bank of America, N.A. as in effect as of the date of receipt or entitlement thereto.[4]

On August 5, 2016, P-Star received a tax refund in the amount of $4,566,646.88 from the Pennsylvania Department of Revenue (the "Tax Refund").[5]

On September 22, 2016, Bracket sent a letter to UBC notifying it that P-Star had received the Tax Refund, which was "for the periods of April 1, 2012 through December 31, 2012 and January 1, 2013 through August 14, 2013."[6]  The letter further stated that:  "Bracket (through P-Star) is holding these funds in a separate interest bearing account during the pendency of its lawsuit against UBC and [Express Scripts, Inc.] currently pending in the Delaware Superior Court."[7]

---

[4] *Id*. Ex. 1 § 2.6(e).  Buyer is defined in the SPA to mean "Bracket," and Parent is defined in the SPA to mean "UBC."  *See id*. Ex. 1 at 1.

[5] *Id*. ¶ 19.

[6] *Id*. ¶ 28 & Ex. 2.

[7] *Id*. Ex. 2.

3

On October 18, 2016, UBC sent Bracket a "Notice of Claim and Intent to Seek Specific Performance." It demanded that Bracket "pay over to [UBC] the Tax Refund and all additional funds, including interest,"[8] but Bracket refused to do so.[9]

On November 8, 2016, UBC filed the Complaint in this action, asserting a single claim for specific performance. Specifically, the Complaint asserts that Bracket "breached Section 2.6(e) of the SPA by failing to forward the Pennsylvania Tax Refund to UBC within fifteen days of P-Star's receipt thereof," and seeks "an order of specific performance compelling Bracket to immediately forward the Pennsylvania Tax Refund to UBC pursuant to the terms of Section 2.6(e) of the SPA."[10]

On December 6, 2016, UBC filed a motion for summary judgment seeking entry of an order to require Bracket to immediately forward the Tax Refund to UBC. That same day, Bracket filed a motion to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief. Oral argument on both motions was heard on March 7, 2017, during which the Court requested supplemental submissions, which were provided on March 21, 2017.

---

[8] *Id.* ¶ 32 & Ex.3.

[9] *Id.* ¶ 33.

[10] *Id.* ¶¶ 40, 44.

4

## II. Analysis

### A. Subject Matter Jurisdiction

The Court of Chancery is a court of limited jurisdiction and "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."[11] The Court "can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[12] "Equitable jurisdiction must be determined from the face of the complaint as of the time of filing, with all material factual allegations viewed as true."[13] In determining jurisdiction, this Court

> will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic "open sesame" to the Court of Chancery. A practical analysis of the adequacy of any legal remedy, then, must be the point of departure for each matter which comes before this Court.[14]

Bracket argues that UBC has an adequate remedy at law because what UBC really seeks to gain from this action is the payment of a monetary sum, and thus

---

[11] Ch. Ct. R. 12(h)(3).

[12] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[13] *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

5

this Court does not have equitable jurisdiction over UBC's claim.[15]  In response,

UBC first points to the parties' stipulation in Section 10.14 of the SPA that:

> (a) The Parties hereto agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that, . . . the Parties shall be entitled, without posting a bond or similar indemnity, to an injunction or injunctions to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof in any court as specified in Section 10.10, in addition to any other remedy to which they are entitled at law or equity.
>
> . . .
>
> (c) Each of the parties agrees that it will not oppose the granting of an injunction, specific performance and other equitable relief (if the applicable conditions with respect thereto have been satisfied hereunder) on the basis that (x) the other party has an adequate remedy at law or (y) an award of specific performance is not an appropriate remedy for any reason at law or equity.[16]

Bracket counters that the "irreparable damage" stipulation in Section 10.14

is not as broad as UBC argues because Section 9.8 of the SPA allegedly limits the

kind of equitable relief that UBC could seek to that which is "non-monetary" in

nature.  According to Bracket, the specific performance remedy that UBC seeks

---

[14] *Id.*

[15] Although Bracket challenged the basis for UBC's request for specific performance as part of its motion to dismiss under Court of Chancery Rule 12(b)(6) on the theory that an adequate remedy at law is available, Bracket did not move to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction and did not press that issue until after the Court raised it *sua sponte* during oral argument.  For the reasons explained in this decision, after reviewing the parties' supplemental submissions and carefully considering the issue further, I am satisfied that equitable jurisdiction exists in this case.

[16] Compl. Ex. 1 § 10.14.

here is "monetary" and thus should be subject to the "exclusive remedy" provision of Section 9.8.[17] The relevant part of Section 9.8 states:

> after the Closing, the indemnification provisions set forth in this Article IX shall provide the exclusive remedy for breach of any covenant, agreement or representation or warranty set forth in this Agreement . . . ; provided however, such limitation shall not impair the rights of any of the Parties to seek ***non-monetary equitable relief***, ***including specific performance*** or injunctive relief to redress any default or breach of this Agreement (subject to the terms and conditions set forth in Section 10.14). In connection with the seeking of any ***non-monetary equitable relief***, each of the Parties acknowledges and agrees that the other Party hereto would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached.[18]

As curious as the nomenclature "non-monetary equitable relief" is, the text of Section 9.8 reflects that the parties contemplated that it would include "specific performance."[19] Thus, the inquiry before the Court remains the appropriateness of specific performance as a form of relief in this action. In conducting this inquiry, the parties' "irreparable damage" stipulation in Section 10.14 of the SPA, quoted

---

[17] *See* Opening Br. in Support of Bracket Hldg. Corp.'s Mot. to Dismiss 20-22.

[18] Compl. Ex. 1 § 9.8 (emphasis added).

[19] The parties did not identify any case law in Delaware addressing similar terminology. Some cases refer to certain equitable remedies, such as restitution and rescission, as involving monetary compensation. *See United Rentals, Inc. v. RAM Hldg., Inc.*, 937 A.2d 810, 831 (Del. Ch. 2007). As discussed below, the specific performance that will be ordered here is to require Bracket to take affirmative action to direct P-Star, a non-party, to forward the Tax Refund to UBC. Even though the ultimate effect of that action is the payment of a specific sum of money, the affirmative action compelled by the order to be implemented itself is not "monetary."

above, is not controlling. "It is a cardinal principle of the law that jurisdiction of a court over the subject matter cannot be conferred by consent or agreement."[20] Rather, the Court must engage in a practical analysis of the adequacy of a legal remedy.[21]

To be adequate, "a legal remedy must be available as a matter of right, be full, fair and complete, and be as practical to the ends of justice and to prompt administration as the remedy in equity."[22] UBC argues that a damages award in this action "would not be as certain, prompt, complete, or efficient" as an order of specific performance because a non-party to this action, P-Star, is currently holding the Tax Refund in a separate account.[23] The primary authority on which UBC relies for support is *East Balt LLC v. East Balt US, LLC*.

In *East Balt*, plaintiffs sought an order compelling defendants to direct an escrow agent to release certain escrow funds. Defendants moved to dismiss under

---

[20] *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995). *See also Kansas City S. v. Grupo TMM, S.A.*, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003) ("If the facts plainly do not warrant a finding of irreparable harm, this Court is not required to ignore those facts, especially since the parties cannot confer subject matter jurisdiction upon a court.").

[21] In *Gildor v. Optical Sols. Inc.*, then-Vice Chancellor Strine held that parties' stipulation of irreparable harm alone was sufficient to demonstrate irreparable harm, but he also cautioned that this would be true only if "the parties did not include the irreparable harm stipulation as a sham, i.e., when an adequate remedy at law clearly exists, or simply as a means to confer jurisdiction on this court." *Gildor v. Optical Sols., Inc.*, 2006 WL 4782348, at *11 (Del. Ch. June 5, 2006) (Strine, V.C.).

[22] *Clark v. Teeven Hldg. Co., Inc.*, 625 A.2d 869, 881 (Del. Ch. 1992).

[23] Pl.'s Suppl. Submission 12-13.

Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that a legal remedy of money damages would be adequate.[24]  Although noting that defendants' arguments for dismissal "are not without merit," the Court ultimately held "it is capable of providing a more certain, prompt, complete, and efficient remedy than is available at law."[25]  In reaching this conclusion, the Court adopted this Court's reasoning in *SecNet Holding, LLC v. Potash* and *Xlete, Inc. v. Willey*, both of which also involved funds held by non-party escrow agents.  In *SecNet* and *Xlete*, the Court observed that even if plaintiff could obtain a judgment for damages in a law court, "defendants have failed to show how plaintiff could then enforce its judgment as to the sum held in escrow."[26]

The facts here are analogous.  The Tax Refund is currently being held by P-Star, a non-party to this action, in a separate account.  Although P-Star is a subsidiary of Bracket, Bracket has failed to demonstrate how UBC could "enforce its judgment as to the sum held" by P-Star.  In this regard, it is notable that in both *East Balt* and *SecNet*, the Court concluded that a legal remedy would be

---

[24] *East Balt LLC v. East Balt US, LLC*, 2015 WL 3473384, at *2 (Del. Ch. May 28, 2015).

[25] *Id.* at *3 (internal quotations omitted).

[26] *SecNet Hldg., LLC v. Potash,* C.A. No. 7781-VCP, at 34 (Del. Ch. Apr. 2, 2013) (TRANSCRIPT); *see also Xlete, Inc. v. Willey*, 1977 WL 5188, at *1 (Del. Ch. June 6, 1977) (finding that defendant failed to establish that plaintiff has a remedy at law that "is as certain, prompt, complete, or efficient as the equitable remedy" the plaintiff sought, which was for an order "directing the release of a sum of money held in escrow," where the escrow agents were "attorneys for the parties").

inadequate despite the fact that, under the relevant escrow agreement, the escrow agent was "required to release disputed funds upon receipt of a certified copy of a final, non-appealable order or judgment of a court of competent jurisdiction as to the proper distribution of all or a portion of such Disputed Amount."[27] Bracket does not contend that P-Star is under any obligation to release the Tax Refund once a court of competent jurisdiction enters a damages award against Bracket, and indeed, it is not apparent how a damages award against Bracket would have any legal effect on P-Star, which is a separate legal entity.

Furthermore, UBC alleges—and I must assume the allegation to be true for purposes of the subject matter jurisdiction analysis[28]—that Bracket's parent company is currently planning to sell Bracket and the Companies.[29] The prospect of such a sale could inject uncertainty into Bracket's ability to fulfill a $4.6 million money judgment. Under these circumstances, an order of specific performance compelling Bracket to direct P-Star to forward the Tax Refund to UBC immediately along with the accrued interest would be more "certain, prompt, complete, and efficient" than a damages award. Therefore, UBC has established

---

[27] *East Balt*, 2015 WL 3473384, at *3-4 (quoting Verified Second Amended Complaint in *SecNet*).

[28] *See Int'l Bus. Machs. Corp.*, 602 A.2d at 78.

[29] Compl. ¶¶ 13-14.

that specific performance is a proper form of relief for its contract claim and thus that the Court has equitable jurisdiction over this action.[30]

## B. Bracket's Motion to Dismiss

The standards governing a motion to dismiss for failure to state a claim for relief are well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[31]

Bracket raises two arguments in support of its motion to dismiss. First, it argues that "UBC's single-count complaint for specific performance is insufficiently pled to survive a motion to dismiss because UBC has an adequate remedy at law."[32] This argument fails for the reasons discussed above, namely, a legal remedy is inadequate under the particular circumstances of this case.

Second, Bracket argues that the Complaint "fails to adequately plead that UBC has actually suffered any harm that needs to be remedied." According to Bracket, "[t]he only conceivable damage to UBC arises from a delay in payment to

---

[30] Because I conclude that the Court has equitable jurisdiction over this case, I need not reach UBC's alternative argument that jurisdiction is proper under 6 *Del. C.* § 18-111.

[31] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations omitted).

[32] Opening Br. in Support of Bracket Hldg. Corp.'s Mot. to Dismiss 6.

UBC" and "[a]ny such damage is completely mitigated by the fact that Bracket is holding the Pennsylvania Tax Refund in a segregated interest-bearing account."[33] Bracket abandoned this argument in its reply brief and, in any event, the argument is frivolous. Accepting as true the allegations in the Complaint, UBC has been deprived of the use of approximately $4.6 million for a substantial period of time because Bracket, despite its clear contractual obligation to pay over the Tax Refund to UBC "within fifteen (15) days" after its receipt thereof, decided to withhold that money. This kind of harm is plainly cognizable under this Court's precedents,[34] and Bracket has cited no authority for the proposition that UBC would suffer no harm because an impermissibly withheld amount was placed in an interest-bearing account beyond UBC's control.

For the above reasons, Bracket's motion to dismiss the Complaint is denied.

## C.    UBC's Motion for Summary Judgment

Under Court of Chancery Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[33] *Id.* 12-13.

[34] *See FdG Logistics LLC v. A&R Logistics Hldgs., Inc.*, 131 A.3d 842, 865-66 (Del. Ch. 2016) (remedying failure to "promptly" pay tax refund), *aff'd*, 148 A.3d 1171 (Del. 2016) (TABLE).

any material fact and that the moving party is entitled to a judgment as a matter of law."[35]

> In responding to a motion for summary judgment, all evidence is to be viewed in the light most favorable to the non-moving party, but the non-moving party may not rest upon its pleadings. Instead, where the moving party has placed in the record facts that would, if undisputed, entitle it to summary judgment, the burden shifts to the non-moving party to show, by affidavit or otherwise, that some material fact remains disputed.[36]

Furthermore, courts "may grant specific performance only if the terms of the contract are established by clear and convincing evidence, and only where the plaintiff has no adequate remedy at law."[37]

Bracket does not dispute that it breached Section 2.6(e) of the SPA, which is confirmed by clear and convincing evidence. Specifically, Bracket does not dispute that (1) P-Star is one of the Company Subsidiaries;[38] (2) on August 5, 2016, P-Star received the Tax Refund in the amount of $4,566,646.88 from a "Governmental Authority," as that term is defined in the SPA;[39] (3) the Tax Refund relates to "Pre-Closing Periods," as that term is defined in the SPA;[40] (4)

---

[35] Ch. Ct. R. 56(c).

[36] *Ginsburg v. Phila. Stock Exch., Inc.*, 2007 WL 1662661, at *2 (Del. Ch. May 31, 2007) (internal quotations omitted).

[37] *Naughty Monkey LLC v. Marinemax Ne. LLC*, 2010 WL 5545409, at *8 n.59 (Del. Ch. Dec. 23, 2010).

[38] Compl. Ex. 1 § 1.36.

[39] *See id.* Ex. 2; *id.* Ex. 1 § 1.81.

[40] *See id.* Ex. 2; *id.* Ex. 1 § 1.130.

13

the Tax Refund was not "included as a current asset on the Final Statement;"[41] and (5) Bracket has not paid over the Tax Refund to UBC.

Bracket nevertheless argues that summary judgment is inappropriate because UBC is not entitled to specific performance and because Bracket asserts the affirmative defenses of recoupment and unclean hands. As discussed above, specific performance is an appropriate remedy for UBC's contract claim. I also conclude that both of Bracket's affirmative defenses fail as a matter of law.

"Recoupment is a common-law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff."[42]

> To prevail on a recoupment claim, the defendant must show among other things that . . . the recoupment claim arises out of the same transaction or occurrence as the plaintiff's suit and the claim is purely a defensive set-off and does not seek an affirmative recovery from the plaintiff. Moreover, both the primary damages claim and the claim in recoupment must involve the same litigants.[43]

In *Finger Lakes Capital Partners*, the Delaware Supreme Court held that "the transactional nexus requirement under recoupment [should] be tightly

---

[41] *Id.* Ex. 1 § 2.6 (e).

[42] *TIFD III-X LLC v. Fruehauf Prod. Co., L.L.C.*, 883 A.2d 854, 859 (Del. Ch. 2004) (Strine, V.C.).

[43] *Id.* (internal quotations omitted).

14

constrained."[44]  "[T]he fact that a single contract is involved does not suffice to demonstrate that the necessary transactional nexus exists."[45]  Instead, the transactional nexus requirement "must be interpreted with an eye towards the central purpose of recoupment, which is to avoid needless delay and unnecessary litigation by permitting a defendant to assert in one action any defenses she may have arising out of the same factual core as the plaintiff's claims."[46]

Bracket argues that its "recoupment defense is based on the same fraud allegations it has asserted in Superior Court."[47]  The Superior Court action, however, does not "arise out of the same transaction or occurrence" as the pre-closing tax refund dispute in this Court.  Bracket has not identified any overlapping operative facts between the Superior Court action and this action, and none is apparent.[48]  According to its Amended Complaint, the gravamen of Bracket's fraud claim in the Superior Court is that UBC, its parent company Express Scripts, Inc.,

---

[44] *Finger Lakes Capital P'rs, LLC v. Honeoye Lake Acq., LLC*, 151 A.3d 450, 454 (Del. 2016).

[45] *TIFD*, 883 A.2d at 864.

[46] *Id.* at 864-65 (internal quotations omitted).

[47] Opening Br. in Support of Bracket Hldg. Corp.'s Mot. to Dismiss 23.

15

and the Vice President of Finance of a UBC subsidiary fraudulently inflated the Companies' financial statements and caused Bracket to overpay by over $80 million in the Transaction.[49] The allegedly inflated financial statements might have caused Bracket to pay more than it otherwise would have for the Companies, but they have no bearing on UBC's entitlement to the Tax Refund. Indeed, because the Tax Refund relates to taxes UBC paid for periods before the Transaction closed, UBC logically would be entitled to the refund whether or not the parties had entered into the SPA.

The defense of unclean hands fails for essentially the same reason. Although "courts of equity have extraordinarily broad discretion in application of the doctrine of unclean hands, . . . the discretion of the Court is not absolute and the improper conduct must . . . have an 'immediate and necessary' relation to the claims under which relief is sought."[50] If a plaintiff's "claim grows out of or depends upon, or is inseparably connected with, his own prior fraud, a court of

---

[48] During oral argument, Bracket suggested that the fraud claim might impact the tax returns filed in earlier periods, *see* Tr. Oral Arg. 52, but Bracket did not put in any evidence, by affidavit or otherwise, that disputes the amount of tax refund that should be returned to UBC. *See* Tr. Oral Arg. 56. In any event, Section 2.6(e) provides that "If any payment by the Buyer to the Parent pursuant to this Section 2.6(e) is subsequently reduced or disallowed, the Parent shall indemnify and hold harmless the Buyer from and against any Tax or cost that is attributable to such reduction or disallowance." Compl. Ex. 1 § 2.6(e).

[49] *See* Amended Complaint, *In re Bracket Hldg. Corp. Litig.*, C.A. No. N15C-02-233 WCC CCLD (Del. Super. Apr. 13, 2016).

[50] *Sloan v. Segal*, 2010 WL 2169496, at *6 (Del. May 10, 2010) (TABLE).

16

equity will, in general, deny him any relief."[51]  Here, however, as previously explained, the fraud claim in the Superior Court is not immediately or necessarily related to the dispute in this action, and UBC's entitlement to the Tax Refund does not "depend upon" and is not "inseparably connected with" the alleged fraud.

For the reasons discussed above, UBC clearly and convincingly has established that Bracket breached Section 2.6 of the EPA based on undisputed facts, and that both of Bracket's affirmative defenses fail as a matter of law. Accordingly, UBC's motion for summary judgment is granted.

\* \* \* \* \*

The parties are directed to confer and to submit a form of final judgment and order within five business days in accordance with this ruling.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

---

[51] 2 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 401 (5th ed. 1941).