IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINGER LAKES CAPITAL PARTNERS, LLC, | § § § | No. 42, 2016 |
| Plaintiff and Counterclaim Defendant Below, Appellant, | § § § § § | |
| v. | § § § | Court Below—Court of Chancery of the State of Delaware |
| HONEOYE LAKE ACQUISITION, LLC, and LYRICAL OPPORTUNITY PARTNERS, L.P., | § § § § | C.A. No. 9742 |
| Defendants and Counterclaim Plaintiffs Below, Appellees. | § § § § | |

Submitted: October 13, 2016
Decided: November 14, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery: **AFFIRMED in part, REVERSED in part, and REMANDED**.

Andrew D. Cordo, Esquire and Toni-Ann Platia, Esquire, Ashby & Geddes, Wilmington, Delaware; Stuart Kagen, Esquire (*argued*) and Kyla Grant, Esquire, Kagen Law Firm, New York, New York, for Plaintiff and Counterclaim Defendant, Appellant, Finger Lakes Capital Partners LLC.

David A. Jenkins, Esquire, Smith Katzenstein & Jenkins LLP, Wilmington, Delaware; Bijan Amini, Esquire (*argued*) and John W. Brewer, Esquire, Storch Amini & Munves PC, New York, New York, for Defendants and Counterclaim Plaintiffs, Appellees, Honeoye Lake Acquisition, LLC and Lyrical Opportunity Partners, L.P.

**SEITZ**, Justice:

# I.

In 2003, Zubin Mehta and Gregory Shalov formed Finger Lakes Capital Partners as an investment vehicle to own several operating companies. Mehta and Shalov contacted Lyrical Partners L.P. to participate in their venture. Lyrical was the money partner, and Mehta and Shalov would manage the investments. The parties signed a term sheet covering their overall relationship, as well as topics relating to two specific investments. On the advice of counsel, Finger Lakes held each of its portfolio companies as separate limited liability companies with separate operating agreements. As is often the case when things start out friendly, the parties' financial relationship was less than perfectly documented.

Over the course of a decade, the portfolio companies did not perform as expected. Finger Lakes' need for additional capital from Lyrical grew, and thus the parties agreed to allow Lyrical to "clawback" its investment money as added protection for its continued investment in the enterprise.

Only one investment performed well and generated a substantial return when it was sold. The others failed or incurred substantial losses. The parties disagreed about how the proceeds from the one profitable investment should be distributed under the network of agreements governing their business relationship. It then fell to the Court of Chancery to sort things out among the various agreements.

In an October 26, 2015 post-trial decision, the Court of Chancery held that the proceeds should be distributed first in accordance with the operating agreement governing the investment in the profitable portfolio company. The term sheet and clawback agreement would then be applied to reallocate the distribution under their terms. The effect of the court's ruling was to distribute substantially all of the profits from the one successful portfolio company to Lyrical.

Finger Lakes argues on appeal that the profitable investment entity's operating agreement superseded the overarching term sheet and clawback agreement; even if the clawback agreement was not superseded, the Court of Chancery applied it incorrectly; Lyrical cannot recover its unpaid management fees through a setoff or recoupment; and, the Court of Chancery improperly limited Finger Lakes' indemnification to expenses incurred until Finger Lakes was awarded a partial judgment on the pleadings, instead of awarding indemnification for all expenses related to these proceedings.

With one exception, we affirm the Court of Chancery's judgment for the reasons stated in its decisions. The court correctly held that the operating agreement did not supersede the term sheet or clawback agreement, because the parties intended that both agreements would govern their overall relationship, whereas the portfolio company operating agreements governed only the particular investment. In other words, the operating agreement was intended to govern the

3

distribution from that investment entity, but the distribution from the specific investment entity would then be subject to the overarching term sheet and clawback agreement. Further, the Court of Chancery's application of the clawback agreement, although contrary to the position Lyrical took at trial, was supported by the record and will not be disturbed on appeal. The court also correctly interpreted the operating agreement to limit Finger Lakes' indemnification rights to expenses incurred up until the point that it obtained a partial judgment on the pleadings. After that point, the proceedings did not relate to Finger Lakes' status as a member in that company and thus did not permit further indemnification.

But, for the reasons set forth below, the Court of Chancery erred when it held that Lyrical could use setoff or recoupment to recover time-barred management fees. Delaware statutory law, 10 *Del. C.* § 8120, precludes setoff for amounts owed outside the statute of limitations. Further, Lyrical cannot assert its time-barred claims by way of recoupment because the defensive claims did not arise from the same transaction as Finger Lakes' claims.

We therefore affirm in part and reverse in part the judgment of the Court of Chancery, and remand to the court to amend its judgment in conformance with this opinion.

4

**II.**

The Court of Chancery set forth the extensive facts that bear on this dispute.[1] Relevant to the one issue we address on appeal, the limited liability companies holding each portfolio company paid management fees to Finger Lakes. The term sheet signed by Mehta, Shalov and Lyrical required them to split the management fees at the Finger Lakes' level in an amount dependent on the source of the fees. After relations soured and Mehta and Shalov filed suit, Lyrical filed a counterclaim seeking to recover not only its share of management fees within the three years prior to filing its August 15, 2014 counterclaim, but also fees that were due more than three years before Lyrical filed its counterclaim—what the Court of Chancery called the "earlier amounts."

Finger Lakes argued that laches barred recovery of the earlier amounts. The Court of Chancery rejected this argument, and held instead that "Lyrical can rely on the earlier amounts, which total $2,509,889, to support its affirmative defenses of recoupment and setoff, to which laches does not apply."[2] The court reasoned that the statute of limitations does not apply to these affirmative defenses. On appeal, we review the Court of Chancery's conclusions of law *de novo*.[3]

---

[1] *Finger Lakes Capital Partners, LLC v. Honeoye Lake Acquisition, LLC*, 2015 WL 6455367 (Del. Ch. Oct. 26, 2015).
[2] *Id.* at *21.
[3] *SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 37 A.3d 205, 209-10 (Del. 2011).

Setoff and recoupment are related but different defenses. "Set-off is a mode of defense by which the defendant acknowledges the justice of the plaintiff's demand, but sets up a defense of his own against the plaintiff, to counterbalance it either in whole or in part."[4] Recoupment, on the other hand, "is a species of defense somewhat analogous to set-off in its character, the chief distinction, however, being that the defense of set-off arises out of an independent transaction, but the defense of recoupment goes to the reduction of the plaintiff's damages for the reason that he, himself, has not complied with the cross obligations arising under the same contract."[5]

By statute, setoff is subject to a three year statute of limitations, and cannot be used to raise from the dead the earlier amounts.[6] This makes sense, as a claim unrelated to the suit brought by the plaintiff should not gain new life from the

---

[4] 1 Victor B. Woolley, *Practice in Civil Actions And Proceedings in the Law Courts of the State of Delaware* § 492 (1906).

[5] *Id.* § 503.

[6] 10 *Del. C.* § 8120 ("This chapter shall apply to any debt alleged by way of setoff or counterclaim on the part of a defendant. The time of limitation of such debt shall be computed in like manner as if an action therefor had been commenced at the time when the plaintiff's action commenced."). Lyrical argues that the Court of Chancery's opinion in *Delaware Chems., Inc. v. Reichhold Chems., Inc.*, 121 A.2d 913, 918 (Del. Ch. 1956) suggests that a claim for setoff is not subject to statutes of limitations. But the counterclaim in that case arose from the same transaction as the plaintiff's claim. Thus, if the defendant did seek leave to replead his claim defensively, as the Chancellor indicated he could, his claim would have been a recoupment claim, and therefore, would not have been time-barred. *See NVF Co. v. New Castle Cnty.*, 276 B.R. 340, 353 (D. Del. 2002), *aff'd*, 61 Fed.Appx. 778, 2003 WL 328428 (3d Cir. Jan. 21, 2003) (Table) (noting that *Delaware Chemicals* involves recoupment and not setoff).

happenstance of the plaintiff having sued the defendant on an unrelated matter. Thus, Lyrical cannot rely on setoff to pursue the earlier amounts.

Although Lyrical did not raise recoupment as an affirmative defense,[7] time-barred claims can be considered for recoupment when they arise out of the same factually-related transaction as the plaintiff's claim.[8] But the Court of Chancery's decision in *TIFD III–X LLC v. Fruehauf Production Co., L.L.C.*[9] explains why great care should be used before allowing a party to assert a stale claim as a basis to reduce its liability for a judgment in a suit brought by a party asserting timely claims. The Court of Chancery explained that:

> [W]here the plaintiff's claim and the defendant's "defense" are factually unrelated, the defendant should not be permitted to assert that defense under the rubric of recoupment. To hold otherwise would permit defendants to avoid statutes of limitation by creative pleading without serving the efficiency concerns underlying the doctrine, and would turn a narrow equitable doctrine designed to permit a summing up of liabilities in a tightly connected factual dispute into a wide-ranging license to revive a relationship's worth of stale grievances, which long predate the fresh dispute that brings the parties to court.

---

[7] *See* App. to Opening Br. at 355:
> Defendants' right to set off bars all or part of Plaintiff's claims because of Plaintiff's failure to acknowledge and abide by its contractual obligations to Defendants arising under the Clawback Agreement and Allocation Agreement, as well as potential non-compliance with its obligations under the HLA Agreement.

[8] *TIFD III–X LLC v. Fruehauf Prod. Co., L.L.C.*, 883 A.2d 854, 859 (Del. Ch. 2004) (citing 80 C.J.S. SET-OFF AND COUNTERCLAIM § 37 (2000)); *Edgemoor Iron Co. v. Brown Hoisting Mach. Co.*, 62 A. 1054, 1055 (1906) ("Recoupment rests on the principle of the desirability of avoiding circuity and multiplicity of actions by allowing the defendant, at his election, to give in evidence matters growing out of the same transaction by way of defense. . . .").

[9] 883 A.2d 854 (Del. Ch. 2004).

To sanction such inefficiency and inequity in the name of recoupment is inadvisable.[10]

In the *TIFD III–X LLC* case, the plaintiff sought a declaration for the interpretation of a distribution provision of a partnership agreement following the partnership's dissolution, and in response, the defendant asserted stale recoupment claims based on the plaintiff's alleged breaches of the partnership agreement over the life of the partnership.[11] The Court of Chancery refused to allow consideration of the stale recoupment claims that would have affected the final distribution to the parties, holding that the plaintiff's claim and the defendant's recoupment "defense" were not factually related and thus did not arise out of the same transaction.[12] That reticence was sound, and suggests that *TIFD III–X LLC* should be read, as we do, to require the transactional nexus requirement under recoupment to be tightly constrained.

Here, we do not view as factually related Lyrical's stale defense attempting to use the earlier amounts arising from the management of multiple portfolio companies, and Finger Lakes' claim for a distribution of the proceeds from the sale of the portfolio company. Like the Court of Chancery's reasoning why the specific investment company agreements did not deal with the subject matter of the term

---

[10] *Id.* at 865.
[11] *Id*. at 855-65.
[12] *Id.*

8

sheet and clawback agreement, we do not view the parties' contest over the distribution of profit from the sale of one investment under the specific operating agreement, term sheet, and clawback agreement as factually related to Lyrical's alleged failure to receive management fees owed to it under the term sheet, which Lyrical had a right to receive "no less often than annually" from 2004 to 2011.[13] Because the two issues are factually unrelated, Lyrical can only assert the earlier amounts as a setoff, which, as explained previously, is time-barred.

Therefore, we affirm in part, and reverse in part, the judgment of the Court of Chancery. On remand, the January 22, 2016 Final Order and Judgment of the Court of Chancery shall be amended to delete paragraphs 5.e. and 6. Jurisdiction is not retained.

---

[13] App. to Opening Br. at 330.

9