IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARION #2-SEAPORT TRUST | § | |
| U/A/D JUNE 21, 2002, | § | |
| | § | No. 306, 2019 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: |
| | § | Court of Chancery |
| v. | § | of the State of Delaware |
| | § | |
| TERRAMAR RETAIL CENTERS, | § | C.A. No. 12875-VCL |
| LLC, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: October 23, 2019
Decided: November 1, 2019

Before **VALIHURA**, Acting Chief Justice;* **VAUGHN**, and **TRAYNOR**, Justices.

## O R D E R

(1)    This action is another chapter in a prolonged dispute regarding the dissolution of Seaport Village Operating Company, LLC (the "Company"). Company members had set their sights on renewing a lease on Seaport Village, a tourist attraction and specialty shopping center located in San Diego, California, and leasing and developing an adjacent property. Disputes arose when the plans fell through. On November 4, 2016, when this action was first filed, Appellee-Plaintiff, Terramar Retail Centers, LLC[1] ("Terramar") owned fifty percent of the membership interests in the Company, and Appellant-Defendant, Marion #2-Seaport Trust U/A/D June 21, 2002 (the "Trust" or

---

* Pursuant to Del. Const. Art. IV §§ 2, 13.

[1] Terramar was previously known as GMS Realty, LLC.

"Appellant"), and non-party San Diego Seaport Village, Ltd. ("Limited"), each owned twenty-five percent.[2]

(2)　　In April 2012, Limited filed an action for dissolution in a San Diego, California Superior Court based on Terramar's alleged failure to diligently pursue a lease renewal of Seaport Village. In August 2013, the California court held that the Company's dissolution matters must be resolved in Delaware.[3] Later that month, Limited filed a petition for dissolution in the Court of Chancery, alleging breach of fiduciary duty and breach of contract against Terramar (the "Limited Action"). In February 2014, the Court of Chancery granted Terramar's motion to dismiss, in part. After trial and post-trial argument, on November 9, 2015, the Court of Chancery ruled in favor of Terramar on all counts.[4] This Court affirmed that ruling.[5]

(3)　　The Trust, which was not party to the Limited Action, threatened to bring similar claims against Terramar. Terramar entered into a Settlement Agreement and Mutual General Releases (the "Settlement Agreement") with the Trust to stave off the

---

[2] Limited, originally a party to this action, was dismissed when Terramar purchased its membership interests in the Company shortly after this action commenced.

[3] *Seaport Vill. Ltd. v. Seaport Vill. Operating Co.*, 2013 WL 12144700, at *2–3 (Cal. Super. Ct. Aug. 2, 2013) (granting summary judgment in favor of the Company for lack of subject matter jurisdiction over the Company's dissolution and concluding that in drafting Section 18-802 of the Delaware LLC Act, the Delaware General Assembly granted exclusive jurisdiction of dissolution matters to the Delaware Court of Chancery as the default, and holding that "Limited does not argue that the members of [the Company] ever agreed to give subject matter jurisdiction to any court other than the Delaware Chancery Court").

[4] App. to Answering Br. at B885–B903 (Transcript Opinion).

[5] *Seaport Vill. Ltd. v. Terramar Retail Ctrs., LLC*, 148 A.3d 1170, 2016 WL 5373085 (Del. Sept. 26, 2016) (TABLE).

potential litigation. Except for certain phantom income claims, the Settlement Agreement, dated as of October 2, 2015, released and discharged "*any and all manner of claims, actions or causes of action, in law or in equity, suits, debts, liens, damages, losses, costs, attorneys' fees or expenses, of any nature whatsoever, known or unknown, fixed or contingent, accrued or not yet accrued, including specifically, but not exclusively, and without limitation, those arising out of, in connection with, or in any way related to the Cohen Claims or Seaport Village through the date of this Agreement.*"[6]

(4)     In December 2015, Terramar sent a notice to the members pursuant to Section 9.5 of the Operating Agreement of the Company (the "LLC Agreement") exercising its right to have its membership interests in the Company purchased by the other members (the "Put Right").[7] If a purchase under the Put Right were not closed within six months, under Section 9.5(d) of the LLC Agreement, Terramar had the ability unilaterally to cause the dissolution of the Company and sell the Company's assets (the "Dissolution Right").[8] The Trust and Limited disputed Terramar's ability to exercise its rights under

---

[6] App. to Answering Br. at B410 (Settlement Agreement § 2.1). In its "Recitals," the Settlement Agreement lists twenty-one allegations (the "Cohen Claims"), all relating to the Trust's contention that Terramar breached its fiduciary and contractual duties in connection with Terramar's management and operation of the Company. By way of illustration, these include the following: "Terramar did not manage the [Company] properly;" "Terramar managed the [Company] in a manner that was intended to benefit Terramar at the expense of Marion and to the detriment of the [Company] as a whole;" "Fees paid to Terramar, payments of interest to Terramar, [and] repayment of member loans or payments constituting equity returns to Terramar have all been improper;" "Failing to use debt financing when refinancing existing debt and funding development;" and "Failing to take advantage of historic low rates available in the market throughout the period that Terramar instead made capital contributions." *See id.* at B408–B410 (Settlement Agreement, Recitals ¶¶ (E)(1)–(21)).

[7] App. to Opening Br. at A87–A88 (LLC Agreement § 9.5(a)–(c)).

[8] *Id.* at A89 (LLC Agreement § 9.5(d)).

Section 9.5, which prompted Terramar to file this action for declaratory judgment. Specifically, Terramar sought a declaration that, under the LLC Agreement, it was "entitled to unilaterally sell all of [the Company's] property and assets to a third party in connection with [the Company's] dissolution" as per Section 9.5, and that it had correctly calculated the Waterfall Distribution under Section 4.[9] Limited then sold its membership interests to Terramar, making the Trust and Terramar the only remaining members of the Company. Limited, by stipulation, was dismissed from the action with prejudice.

(5) On July 17, 2017, two days before the argument on the Trust's motion to dismiss this action for lack of personal jurisdiction, and approximately eight months after this action was filed, the Trust filed an action against Terramar in the Superior Court in Los Angeles, California (the "California Action") based on theories of breach of fiduciary duty, breach of the LLC Agreement, and the breach of the implied covenant of good faith and fair dealing. It sought a declaration that Terramar may not sell Company assets without the Trust's consent, that it invalidly purchased Limited's interests, and that it is not entitled to its priority return under the LLC Agreement. The Trust had originally moved to dismiss the instant action for lack of personal jurisdiction. The Court of Chancery denied that motion, and this Court affirmed on April 20, 2018.[10] In May of 2018, the Trust moved for a stay or dismissal on *forum non conveniens* grounds in favor of the second-filed California

---

[9] *Id.* at A410 (Verified and Amend. Supp. Compl. ¶¶ a–b).

[10] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2017 WL 3575712 (Del. Ch. Aug. 18, 2017)*, aff'd sub nom. Marion #2-Seaport Tr. U/A/D June 21, 2002 v. Terramar Retail Ctrs.*, 184 A.3d 1290, 2018 WL 1887769 (Del. Apr. 20, 2018) (TABLE).

Action. The Court of Chancery denied that motion,[11] and then denied the Trust's attempt to add counterclaims in this action.[12] It also sanctioned the Trust for engaging in "serial efforts to delay this case," and for deploying "these tactics both for litigation advantage and to gain leverage in the underlying business dispute, which involves the dissolution of an entity and the sale of its assets."[13]

(6)     After a two-day trial on January 23–24, 2019, the Court of Chancery, in its May 22, 2019 Memorandum Opinion (the "Opinion"), ruled in favor of Terramar on all counts.[14] It granted the requested declaratory relief, finding that Terramar had met the requirements under the LLC Agreement to exercise its rights under Section 9.5 and unilaterally sell the Company's assets, and that the Waterfall Distribution had been correctly calculated.[15] The Trust filed a timely notice of appeal on July 17, 2019.

(7)     Having considered this matter on the briefs, oral arguments of the parties, and the record below, this Court concludes that the same should be affirmed on the basis of and for the reasons assigned by the Court of Chancery in its well-reasoned Opinion, Final Order and Judgment dated June 17, 2019, Order Denying Defendant's Motion *in*

---

[11] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2018 WL 4048066, at *6 (Del. Ch. Aug. 23, 2018).

[12] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, C.A. No. 12875-VCL (Del. Ch. Dec. 4, 2018) (Order).

[13] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2018 WL 6331622, at *1 (Del. Ch. Dec. 4, 2018).

[14] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2019 WL 2208465, at *1 (Del. Ch. May 22, 2019).

[15] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2019 WL 2515924, at *1 (Del. Ch. June 17, 2019) (Order).

*Limine* dated January 18, 2019, Order Denying Defendant's Second Motion *in Limine* dated January 18, 2019, Order Denying Defendant's Motion for Leave to File Amended Answer and Counterclaims dated December 4, 2018, Memorandum Opinion dated December 4, 2018 granting Plaintiff's Motion *in Limine*, Order Denying Defendant's Motion for Reargument and/or Amendment of Case Scheduling Order dated September 19, 2018, Order Denying Defendant's Motion to Dismiss or Stay in Deference to the California Action dated August 23, 2018, and Order Governing Case Schedule dated June 14, 2018.

(8)     As to the Trust's claim that the Court of Chancery erred by declining to dismiss or stay this action, and in the process, improperly expanded the scope of Terramar's pleadings to include issues not raised by its Complaint, but which were alleged in the California Action, we disagree.  The court weighed the *Cryo-Maid*[16] factors in response to the Trust's motion arguing *forum non conveniens*, and it found that this action should remain in Delaware.[17]  We find no abuse of discretion in its ruling.[18]  Further, the court correctly understood Terramar's Complaint to request that the court address whether the conditions in Section 9.5 of the LLC Agreement had been satisfied.  Paragraph 31 of the Complaint alleges that "[t]here is a ripe dispute among the parties concerning Terramar's right under Section 9.5 of the Operating Agreement to sell [the Company's] property and

---

[16] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964).

[17] *Terramar*, 2018 WL 4048066, at *6.

[18] *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014) ("A *forum non conveniens* motion is addressed to the trial court's sound discretion.").

6

assets, and the Waterfall Distribution, and therefore there is a ripe dispute among the parties as to the amount of the Waterfall Distribution."[19] Moreover, the Complaint requests a declaration that "Terramar is entitled to unilaterally sell all of [the Company's] property and assets to a third party in connection with [the Company's] dissolution."[20] Terramar clearly sought a judicial determination as to whether it could exercise its Dissolution Right. Implicit in that request was the question of whether Terramar had complied with Section 9.5. Accordingly, this claim fails.

(9) Further, we agree with the Court of Chancery that the Trust cannot raise its "affirmative defenses" here because the defenses are time-barred.[21] The Trust filed its answer containing the defenses on June 28, 2018, but the alleged conduct spans a time-frame from 2003 to 2012. The trial court explained that a narrow exception to the limitations period exists that permits a defendant to use the defense of recoupment to resuscitate a time-barred claim and reduce the amount of damages that a plaintiff recovers. "[T]ime-barred claims can only be asserted for recoupment 'when they arise out of the same factually-related transaction as the plaintiff's claim.'"[22] Further, "[t]he defendant also must show that 'the recoupment claim seeks the same type of relief as is sought by the

---

[19] App. to Opening Br. at A410 (Verified and Amend. Supp. Compl. ¶ 31).

[20] *Id.* (¶ a).

[21] *Terramar*, 2019 WL 2208465, at *20–21. The Trust's principal challenges are that Terramar (a) incurred excessive fees in connection with pre-development costs that should have been used to pay down the Terramar Priority Return, (b) should have utilized cheaper third-party financing rather than fund capital contributions and Member Loans to the Company, and (c) used an ineffective negotiating strategy in pursuing the lease extension on Seaport Village. *Id.* at *18.

[22] *Id.* at *20 (citing *Finger Lakes Capital P'rs, LLC v. Honeoye Lake Acq., LLC*, 151 A.3d 450, 453 (Del. 2016)).

plaintiff' and that 'the claim is purely a defensive set-off and does not seek an affirmative recovery from the plaintiff.'"[23]  "Both the primary damages claim and a claim in recoupment must involve the same litigants."[24]

(10)  In this case, the Court of Chancery held that the Trust could not save its time-barred challenges as a recoupment defense "because the time-barred challenges do not arise out of the same transaction as the claims that Terramar has asserted under Section 9.5 of the LLC Agreement."[25]  Whereas Terramar's claims relate to its exercise of the Put Right and Dissolution Right, "[t]he Trust's challenges relate to historical events involving alleged breaches of other provisions of the LLC Agreement."[26]  We find no error in the Court of Chancery's analysis.  Thus, we conclude that the Court of Chancery correctly held that the three-year statute of limitations precluded assertion of the Trust's challenges predating June 28, 2015 (three years prior to the Trust's assertion of its affirmative defenses).[27]

---

[23] *Id.* (quoting 80 C.J.S. *Set-off and Counterclaim* §36, Westlaw (database updated Mar. 2019)). In connection with its analysis of the Settlement Agreement, the Court of Chancery concluded that the Trust's defenses "operate to reduce Terramar's financial recovery following any sale of the Company's assets," and that, "[a]lthough its arguments are nominally titled defenses, the Trust is seeking to shift value from Terramar to the Trust by imposing losses on Terramar and generating additional money for the Trust." *Id.* at \*19.

[24] *Id.* (quoting 80 C.J.S. *Set-off and Counterclaim* § 65, Westlaw (database updated Mar. 2019)) (internal quotation marks omitted).

[25] *Id.* at \*21.

[26] *Id.*; *see TIFD III-X LLC v. Fruehauf Prod. Co., L.L.C.*, 883 A.2d 854, 856, 866–67 (Del. Ch. 2004) (rejecting "time-barred breach of contract claims as either a counterclaim or a defense" because they related to breaches of the partnership agreement that allegedly occurred several years prior to the liquidation at hand); *see also Finger Lakes*, 151 A.3d at 454 (finding "the transactional nexus requirement under recoupment to be tightly constrained").

[27] The Trust also argues that the Court of Chancery erred (1) by interpreting the Settlement Agreement in contravention of its California forum provision requiring such interpretation to occur in a California Superior Court, and (2) in interpreting the Settlement Agreement release to include a release of defenses.  Terramar disagrees and contends that this action "was not brought to enforce

(11)    Moreover, we find no error with any other aspect of the Court of Chancery's decision, including whether the conditions in Section 9.5 of the LLC Agreement were satisfied, whether the true opinion of the Company Fair Market Value was disclosed, whether the Purchase Price was accurately computed, and whether Terramar negotiated in good faith or breached the covenant of good faith and fair dealing.

(12)    Finally, we agree with the Court of Chancery that LLC Agreement Section 9.5 contains a "joint purchase requirement," although we struggle to see how this issue ever became fully ripe. The parties stipulated that the Trust, together with the Desert Troon Companies ("Desert Troon"), was interested in purchasing Terramar's membership interests,[28] but the record before us does not indicate that the Trust ever attempted to make a buy-out offer. Instead, the Court of Chancery found that Desert Troon was interested in purchasing the leases only.[29] Further, the Court of Chancery found that, "[b]y the time the appraisal process concluded in June 2016, it was evident that Limited and the Trust would not buy Terramar's interest at anything close to [the Purchase Price of] $55 million."[30]

_____

the Settlement Agreement." Answering Br. at 23. At oral argument, the parties agreed that a resolution of the statute of limitations issue in Terramar's favor would obviate the need for this Court to resolve the issues relating to the Settlement Agreement. We agree. Because the Trust's defenses are time-barred, we do not reach the issues regarding the Settlement Agreement.

[28] App. to Opening Br. at A5204 (Joint Pre-Trial Stipulation and [Proposed] Order) ("In February 2016, Mr. Cohen participated in a telephone call with Hugh Zwieg in which Mr. Cohen explained that Mr. Cohen and Desert Troon wished to purchase Terramar's membership interest in [the Company].").

[29] *Terramar*, 2019 WL 2208465, at *17.

[30] *Id.* at *8.

9

Accordingly, based upon the record before us, we find no error as to the court's resolution of the Trust's "joint purchase requirement" contention.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery be, and the same hereby is, AFFIRMED.

BY THE COURT:


*/s/ Karen L. Valihura*
Acting Chief Justice

10