# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN HALINSKI, individually and as the Representative of the former stockholders of RALOID CORPORATION,<br><br>                    Plaintiff,<br><br>     v.<br><br>ADS GROUP ACQUISITION, LLC, and ADS GROUP OPCO, LLC<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2024-1237-PRW |

Submitted: July 24, 2025
Decided: July 28, 2025

*Upon Plaintiff's Motion for Judgment on the Pleadings,*
**GRANTED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Michael B. Gonen, Esquire (*argued*), DUANE MORRIS LLP, Wilmington, Delaware; James H. Steigerwald, Esquire, DUANE MORRIS LLP, Philadelphia, Pennsylvania, *Attorneys for Plaintiff John Halinski*.

Paul D. Brown, Esquire (*argued*), Dakota B. Eckenrode, Esquire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware, *Attorneys for Defendants ADS Group Acquisition, LLC and ADS Group Opco, LLC*.

**WALLACE, J.**

This breach-of-contract dispute arises out of Defendant ADS Group Acquisition, LLC's ("Purchaser"), acquisition of Raloid Corporation from Raloid's former stockholders (the "Transaction").[1] Plaintiff John Halinski is the individual representative of Raloid's former stockholders (collectively "Sellers").[2] The parties effectuated the Transaction with a Stock Purchase Agreement ("SPA").[3]

The SPA provided for a $22,000,000 purchase price, a portion of which was deferred to cover Sellers' potential post-closing liability.[4] Relevantly, the SPA deferred payment of the Tax Holdback, $4,439,000,[5] to cover certain possible post-closing tax liabilities.[6] Over time, the SPA required Purchaser to release the Tax Holdback to Sellers in three unequal installments.[7] Defendant ADS Group Opco, LLC ("Parent", collectively with Purchaser, "ADS"), guaranteed the Tax Holdback's payment.[8] ADS released the First Intermediate Tax Holdback, but never paid the

---

[1] *See* Verified Complaint for Breach of Contract (hereafter "Compl.") ¶¶ 1-6 (D.I. 1); Defendants' Answer to Verified Complaint (hereafter "Answer") at 5-6 (D.I. 11).

[2] Compl. ¶ 9; Answer at 3; Compl., Ex. A (hereafter "SPA") § 8.01(a).

[3] *See* SPA; Compl. ¶ 1; Answer at 1.

[4] *See* SPA §§ 2.01, 2.03, 7.08, 7.15; Compl. ¶¶ 17-19; Answer at 5-6.

[5] SPA Article I (defining "Tax Holdback Amount" as "$4,439,000").

[6] *See id.* § 7.15(a).

[7] *Id.* § 7.15(b). Specifically, the "First Intermediate Tax Holdback," $721,000. was due September 30, 2023. *Id.* § 7.15(b)(i). The "Second Intermediate Tax Holdback," $2,735,000, was owed October 30, 2024. *Id.* § 7.15(b)(ii). The "Final Tax Holdback" will become payable on October 30, 2025. *Id.* § 7.15(b)(iii).

[8] *Id.* § 8.18.

Second Intermediate Tax Holdback.[9]  Mr. Halinski filed this suit to recover the unpaid Tax Holdback.[10]

In their Answer, ADS raises a single affirmative defense—arguing Sellers' own material breaches of the SPA bar Mr. Halinski's claims.[11]  ADS alleges Sellers breached Sections 3.08 and 3.10 "by failing to accurately account for certain customer contracts as loss contracts in accordance with GAAP which ultimately materially misstated the financial position of Raloid."[12]

Mr. Halinski moves for judgment on the pleadings pursuant to Court of Chancery Rule 12(c).[13]  His motion highlights that ADS's Answer concedes its non-payment of the Second Intermediate Tax Holdback breached the SPA.[14]  Mr. Halinski also maintains ADS's affirmative defense does not preclude judgment ordering the Second Intermediate Tax Holdback's release.[15]  ADS does not substantively counter or deny Mr. Halinski's argument regarding the breach claim.  But ADS insists its affirmative defense is enough to thwart judgment on the pleadings.[16]  For the

---

[9]   Compl. ¶¶ 28-29; Answer at 6.

[10]  *See* Compl. ¶¶ 1-6, 38-51.

[11]  *See* Answer at First Affirmative Defense.

[12]  *Id.*

[13]  *See generally* Plaintiff's Motion for Judgment on the Pleadings (hereafter "MJP") (D.I. 12).

[14]  *Id.* ¶¶ 1-3, 28-36.

[15]  *Id.* ¶¶ 37-49.

[16]  *See generally* Defendants' Answering Brief in Opposition to Plaintiff's Motion for Judgment on the Pleadings (hereafter "MJP Opp'n") (D.I.18).

following reasons, the Court **GRANTS** Mr. Halinski's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE TRANSACTION AND THE SPA

In 2022 the parties entered the Transaction, whereby Purchaser acquired Raloid, a design and manufacturing company in the aerospace and defense sectors.[17] To accomplish the Transaction, the parties executed the SPA.[18] Several SPA provisions are relevant to resolving this motion. The SPA set a $22,000,000 "Purchase Price,"[19] but permitted Purchaser to defer payment of the "Holdback Amount" – "equal to the sum of the Adjustment Holdback Amount,[20] the Indemnity Holdback Amount[21] and the Tax Holdback Amount[22]."[23] The current motion implicates the Tax Holdback Amount and Indemnity Holdback Amount.[24]

Purchaser can recover from the Tax Holdback Amount, "[i]f any Seller is actually required under Section 7.02 to indemnify Purchaser for Pre-Closing Taxes or any other Tax matter."[25] Purchaser never made any indemnification claim for

---

[17] Compl. ¶¶ 15-17; Answer at 5. *See generally* SPA.

[18] *See generally* SPA.

[19] *Id.* Article I (defining "Purchase Price").

[20] The SPA defines "Adjusted Holdback Amount" as "$250,000." *Id.*

[21] The SPA defines "Indemnity Holdback Amount" as "$150,000." *Id.*

[22] The SPA defines "Tax Holdback Amount" as "$4,439,000." *Id.*

[23] *Id.* § 2.03(b).

[24] *See generally* MJP; MJP Opp'n.

[25] SPA § 7.15(a).

"Pre-Closing Taxes or any other Tax matter."[26]  The SPA requires Purchaser to release the Tax Holdback Amount to Sellers in three unequal tranches.[27]  Purchaser never paid the Second Intermediate Tax Holdback, $2,735,000, which was due October 30, 2024.[28]

Purchaser could recover from the Indemnity Holdback Amount if Sellers breached certain contractual representations and warranties.[29]  Specifically, Section 7.08 states:

> from and after the Closing, any losses resulting from claims for indemnification pursuant to Section 7.02(a) (other than losses (i) related to any inaccuracy or breach of any Seller Fundamental Representation or Tax Representation or (ii) results from claims for indemnification based on Fraud) shall be satisfied: (i) first, by recouping such losses from the Indemnity Holdback Amount and (ii) second, solely from the R&W Insurance Policy in accordance with the procedures and subject to the limitations set forth therein.[30]

The SPA required Purchaser to release the remaining balance of the Indemnity Holdback Amount "[n]o later than the fifth [] Business Day following the 12-month

---

[26]  Compl. ¶ 26; Answer at 7.

[27]  *Id.* § 7.15(b).  Specifically, the "First Intermediate Tax Holdback," $721,000 was due September 30, 2023. *Id.* § 7.15(b)(i).  The "Second Intermediate Tax Holdback," $2,735,000, was owed October 30, 2024. *Id.* § 7.15(b)(ii).  The "Final Tax Holdback" is payable on October 30, 2025. *Id.* § 7.15(b)(iii).

[28]  *Id.* § 7.15(b)(ii); Answer at 9 ("Defendants admit only that payment was not made on October 30, 2024.").

[29]  *See* SPA § 7.08.

[30]  *Id.*

anniversary of the Closing Date[.]"[31]  Purchaser timely released the Indemnity

Holdback Amount to Sellers in 2023.[32]

The SPA contains numerous "representations and warranties regarding

[Raloid]."[33]  Relevant here, are Sections 3.08 and 3.10.[34]  The indemnification

procedure outlined in the SPA is Purchaser's "sole and exclusive remedy . . . with

respect to any loss . . . for any breach of . . . any representation [or] warranty."[35]

Under that procedure, once an indemnitee provides notice of a claim, the

indemnifying party has 30 days to dispute liability.[36]  In the event of a dispute, "the

Indemnifying Party and the Indemnified Party shall negotiate in good faith to resolve

such dispute. If such dispute remains unresolved . . . the Indemnified Party shall have

the right to pursue [] remedies" such as litigation.[37]

---

[31]  *Id.* § 7.08(f).

[32]  *See, e.g.*, MJP Opp'n at 3 ("[a]s required by §7.08(f) of the SPA, the Purchaser released the Indemnity Holdback Amount to the Sellers twelve months after the date of closing."); Plaintiff's Reply Brief in Further Support of the Motion for Judgment on the Pleadings (hereafter "MJP Reply") at 7-8 (D.I. 21) (". . . the already-disbursed Indemnity Holdback Amount . . . .").

[33]  SPA Article III.

[34]  Sections 3.08 and 3.10 exact text is not relevant to resolving the motion.  Generally, Section 3.08 deals with Raloid's "Financial Statements" and represents such statements are accurate and GAAP compliant. *See id.* § 3.08.  Section 3.10 represents and warrants that Raloid has no undisclosed liabilities.

[35]  SPA § 7.09.

[36]  *Id.* § 7.07.

[37]  *Id.*

## B. PROCEDURAL HISTORY AND ADS'S INDEMNIFICATION DEMAND

Mr. Halinski filed his Complaint in December 2024.[38]  The Complaint has three causes of action: (1) Count I – Breach of Contract against Purchaser for not releasing the Second Intermediate Tax Holdback;[39] (2) Count II – Breach of Contract against Parent for not paying the Second Intermediate Tax Holdback "as guarantor";[40] and (3) Count III – Breach of Contract against Purchaser for not indemnifying Mr. Halinski's costs and fees in this case.[41]

On January 31, 2024, the eve of the deadline to respond to the Complaint, Purchaser sent an indemnification demand to Sellers (the "Indemnity Demand").[42] The Indemnity Demand alleged Sellers breached the representations and warranties in Sections 3.08 and 3.10 of the SPA.[43]  Accordingly, Purchaser demanded $2.8 million in damages.[44]  A week later, ADS answered the Complaint, raising an affirmative defense, mirroring the Indemnity Demand's allegations.[45]

---

[38]  *See generally* Compl.

[39]  *See id.* ¶¶ 38-42.

[40]  *See id.* ¶¶ 43-47.

[41]  *See id.* ¶¶ 48-51.

[42]  *See* MJP, Ex. E (hereafter "Indemnity Demand").

[43]  *Id.*

[44]  *Id.*  That $2.8 million demand "represents (i) a primary loss of approximately $318,000, which the Company suffered on the applicable customer contracts and (ii) an additional loss of $2.4 million for the failure to properly account for the liability, resulting in an overstatement of EBITDA, on which Purchaser's valuation of [Raloid] was premised." *Id.*

[45]  *See* Answer. *Compare id.* at First Affirmative Defense, *with* Indemnity Demand.

Mr. Halinski filed this motion for judgment on the pleadings almost immediately.[46] The parties timely completed briefing thereon.[47]

While briefing was ongoing, Sellers sent Purchaser a letter responding to the Indemnity Demand and disputing any liability (the "Indemnity Demand Response").[48] Purchaser replied to the Indemnification Demand Response, restating its position that Sellers had to indemnify the alleged breaches of Section 3.08 and 3.10 (the "Indemnity Demand Reply").[49]

The Court heard oral argument on the motion in May 2025. At argument, ADS clarified several relevant points.[50] ADS admitted it did not release the Second Intermediate Tax Holdback and only formalized an excuse for nonpayment "right before the answer was filed in this suit."[51] ADS also conceded the SPA establishes separate "pot[s]" for contractual indemnity.[52] ADS agreed the at-issue Tax Holdback is one such pot for "tax-related [indemnity] chargeable to the [S]eller[s]."[53] Third, ADS acknowledged the SPA caps its recoverable indemnity at $150,000, and the

---

[46]  *See generally* MJP.

[47]  *See generally* MJP Opp'n; MJP Reply.

[48]  *See* MJP Opp'n, Ex. 2 (hereafter "Indemnity Demand Response") (dated February 20, 2025).

[49]  *See* MJP Opp'n, Ex. 3 (hereafter "Indemnity Demand Reply") (sent March 10, 2025).

[50]  5/25/25 Hearing Transcript ("Hrg. Tr.") (D.I. 26).

[51]  *Id.* at 10-11.

[52]  *Id.* 11-14.

[53]  *Id.* 11-13. Similarly, ADS admitted the Indemnification Holdback Amount is a separate pot "available [to indemnify] any breach of nonfundamental reps and warranties[.]" *Id.* 13-14.

Court could exercise its equitable powers to order release of the excess portion of Second Intermediate Tax Holdback.[54]

## II. STANDARD OF REVIEW

Court of Chancery Rule 12(c) permits a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."[55] Courts grant a Rule 12(c) motion "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[56] In ruling on a Rule 12(c) motion, courts consider all the pleadings "include[ing] answers and affirmative defenses," as well as "documents incorporated by reference and exhibits attached to the pleadings[.]"[57] Courts view those facts and the inferences drawn therefrom, in the light most favorable to the non-movant.[58] Yet, conclusory allegations, and those unsupported by allegations of specific fact, are irrelevant to resolving a Rule 12(c) motion.[59]

---

[54] *Id.* 21-24.

[55] Del. R. Ch. Ct. 12(c).

[56] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[57] *Jiménez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019).

[58] *Examen, Inc. v. VantagePoint Venture Partners 1996*, 873 A.2d 318, 321-22 (Del. Ch. 2005) (citing *Desert Equities*, 624 A.2d at 1205).

[59] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000) (citing *In re Lukens Inc. Shareholders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999)).

## III. DISCUSSION

Mr. Halinski's motion requests judgment on the pleadings in Sellers' favor on all counts.[60] ADS does not dispute it breached the SPA by not releasing the Second Intermediate Tax Holdback.[61] Instead, ADS argues it can withhold payment,[62]

---

[60] *See generally* MJP. The motion specifically contends, "Plaintiff is entitled to Judgment in his favor on Count III." *Id.* ¶¶ 32-36; *see* Compl. ¶¶ 48-51 (alleging Mr. Halinski is entitled to his expenses, including attorneys' fees, incurred "in prosecuting this action for Purchaser's manifest breach of its obligations under the SPA."). ADS does not respond to that argument at all. *See generally* MJP Opp'n. Given that [i]ssues not briefed are deemed waived," if Mr. Halinski prevails on his arguments concerning Counts I and II, judgment on the pleadings is also proper concerning Count III. *Emerald Partners v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (citations omitted).

[61] *See* Answer at 8-9 ("Defendants admit only that payment was not made on October 30, 2024"); *id.* at 12 ("Parent admits only that it has not paid the Second Intermediate Tax Holdback payment."). *See also* MJP ¶¶ 1-2, 28-36 (citing Answer at 9) (arguing ADS breached the SPA by failing to pay the Second Intermediate Tax Holdback); MJP Opp'n (failing to respond to Mr. Halinski's breach argument); MJP Reply at 1-2 (noting "Defendants do not dispute their breach whatsoever. . . . At no point do Defendants raise any despite that the SPA required payment of $2,735,000 on October 30, 2024, which they failed to make, depriving Plaintiff of those funds." (citing *Barbey v. Cerego*, 2023 WL 6366055, at *10 (Del. Ch. Sept. 29, 2023) (holding issues not briefed are waived)). ADS also admits it "never noticed any indemnification claim under the SPA arising from "Pre-Closing Taxes or any other Tax matter." Answer at 7.

[62] ADS relies on Sections 7.02(a) and 7.08(a) to support the affirmative defense. MJP Opp'n at ¶¶ 1-4 (citing SPA §§ 7.02(a), 7.08(a)). There is some dispute about whether ADS advances a setoff or recoupment defense. *See* MJP Opp'n ¶¶ 6, 14, 20 ("[w]hile Plaintiff frames Defendants' affirmative defense as a set-off, it is more akin to an affirmative defense of recoupment.") (citing *Finger Lake Cap. Partners, LLC v. Honeoye Lake Acq., LLC*, 151 A.3d 450, 453 (Del. 2016) ("[s]etoff and recoupment are related but different defenses.")). Ultimately, the Court need not resolve that dispute, because ADS's affirmative defense does not preclude judgment on the pleadings under either framework. That being said, ADS's affirmative defense sounds in recoupment, not setoff. *Finger Lake*, 151 A.3d at 453 ("the defense of setoff arises out of an independent transaction, but the defense of recoupment goes to the reduction of the plaintiff's damages for the reason that he, himself, has not complied with the cross obligations arising under the same contract."). At oral argument ADS admitted recoupment typically allows a party to recover funds previously paid, not withhold a separate owed payment. Hrg. Tr. at 17-18. With that understanding, ADS's affirmative defense—if meritorious—might allow Purchaser to recover the Indemnity Holdback Amount, but not to withhold the Second Intermediate Tax Holdback.

-10-

because Sellers breached Sections 3.08 and 3.10 of the SPA.[63] From there, ADS insists the affirmative defense evidences a factual dispute that precludes judgment on the pleadings.[64]

Mr. Halinski counters ADS in two ways.[65] First, he argues Purchaser's failure to comply with the SPA's indemnification procedure bars the affirmative defense.[66] While the Indemnity Demand gave Sellers notice of that claim,[67] there is no dispute ADS did not follow Section 7.07's indemnification dispute resolution procedures.[68] ADS suggests the Court should excuse compliance with Section 7.07 as futile.[69]

Second, Mr. Halinski argues Section 7.08's limited recourse provision eviscerates ADS's indemnity defense.[70] It is undisputed that "the Indemnity

---

[63] *See* MJP Opp'n ¶¶ 10-18; Answer at First Affirmative Defense. ADS notes Mr. Halinski concedes the SPA imposes an indemnification obligation for losses related to Sellers' contractual representations and warranties. MJP Opp'n ¶ 9 (citing MJP ¶ 21).

[64] ADS argues, "there is a dispute as to whether or not Sellers have breached representations and warranties they have made under the SPA and there is a dispute as to whether ADS should be entitled to recoupment of certain amount as it relates to the alleged breach. To the extent the Court does find there was a breach of Sellers' representations and warranties, there is a dispute over the proper quantification of damages under the recoupment defense." *Id.* ¶ 18.

[65] *See* MJP ¶¶ 37-49 (arguing "Defendants' 'Affirmative Defense' does not put a material fact in dispute[.]").

[66] *Id.* ¶¶ 39-45.

[67] *See* Indemnity Demand.

[68] *See* MJP Opp'n ¶¶ 19-24 (not arguing ADS complied with Section 7.07 of the SPA); MJP Reply at 3-4 (noting "Defendants concede their noncompliance with the pre-litigation dispute resolution mechanism[.]").

[69] *See* MJP Opp'n ¶¶ 19-24.

[70] MJP ¶¶ 46-49.

Holdback Amount" contemplated by Section 7.08[71] "has already been transferred to Sellers under §7.08(f)."[72] ADS nevertheless argues that "in order to comply with the SPA, [they] must seek to recoup the Indemnity Holdback Amount – $150,000 – from the Sellers."[73]

In turn, resolution of the current motion hinges on two questions: (1) does ADS's admitted failure to comply with the SPA's indemnification procedure invalidate their affirmative defense? and (2) if ADS's affirmative defense is procedurally proper, does it permit withholding the Second Intermediate Tax Holdback?

---

[71]  Section 7.08(a) states "any losses resulting from claims for indemnification pursuant to Section 7.02(a) (other than losses (i) related to any inaccuracy or breach of any Seller Fundamental Representation or Tax Representation or (ii) resulting from claims for indemnification based on Fraud) shall be satisfied: (i) first, by recouping such losses from the Indemnity Holdback Amount and (ii) second, solely from the R&W Insurance Policy in accordance with the procedures and subject to the limitations set forth therein." SPA § 7.08(a). *See also id.* § 7.09 ("the Parties expressly acknowledge and agree that the sole and exclusive remedy available to any Purchaser Indemnified Party . . . with respect to any loss claimed under this Agreement . . . for any breach of this Agreement, including any representation, warranty . . . shall be pursuant to the indemnification provisions set forth in this Article VII.").

[72]  MJP Opp'n ¶¶ 25-27; *see* MJP Reply at 7-8 (noting "Defendants do not dispute that the limited recourse provision applies, and . . . the Indemnity Holdback Amount has already been disbursed[.]"). *See also* SPA § 7.08(f) ("[n]o later than the fifth (5th) Business Day following the 12-month anniversary of the Closing Date, Purchaser shall release to the Sellers' Representative Escrow Amount . . . from the Holdback fund an aggregate amount equal to (x) the then-remaining balance of the Indemnity Holdback Amount, minus (y) the aggregate amount of all losses specified in any then-unresolved good faith claims for indemnification made in accordance with this Agreement prior to such date.").

[73]  MJP Opp'n ¶¶ 25-27.

**A. WITH ADS'S FAILURE TO COMPLY WITH SECTION 7.07'S DISPUTE RESOLUTION PROCEDURE, THE AFFIRMATIVE DEFENSE IS UNRIPE.**

Mr. Halinski asserts ADS's failure to comply with the SPA's indemnification procedure bars the affirmative defense.[74] According to ADS, the Court should excuse any non-compliance, "because [performance] would be futile for two simple reasons: (i) Plaintiff has expressly and unequivocally made clear he will not compromise on Defendants' indemnity claims and (ii) the dispute resolution timing would expire before oral argument on Plaintiff's [m]otion[.]"[75]

---

[74] MJP ¶¶ 39-45. Mr. Halinski insists "the contractually-specified, bargained-for indemnification procedures, including [Section 7.07], are the 'sole and exclusive remedy available . . . for any loss claimed under th[e] [SPA], including any representation [or] warranty[.]'" *Id.* ¶¶ 39-40 (quoting SPA § 7.09) (citing *Bold St. Peters, L.P. v. Bold on Boulevard LLC*, 2024 WL 4825169, at *5 (Del. Ch. Nov. 19, 2024) ("Delaware law requires compliance with notice and cure provisions."); *Cornell Glasgow, LLC v. LaGrange Props., LLC*, 2012 WL 6840625, at *13 (Del. Super. Ct. Dec. 7, 2012) (holding a party's failure to comply with a contractual notice and cure provision "extinguishes any claim of breach it might later pursue.")). Given ADS sent the Indemnity Demand on January 31, 2025, Section 7.07 gave Sellers until March 2025 to respond – with any dispute triggering "a further 30-day good-faith dispute resolution period." MJP ¶¶ 42-43; *see* SPA § 7.07; Indemnity Demand. Thus, Mr. Halinski asserts ADS cannot advance its affirmative defense "without having first satisfied the non-litigation procedures to which it agreed at the bargaining table." MJP ¶ 43. Mr. Halinski also questions the legitimacy of ADS's affirmative defense, alleging "Defendants' purported notice lacks substance, boarding on frivolity." *Id.* ¶¶ 44-45. Mr. Halinski rejects the Indemnity Demand's position that "certain of the Company's customer contracts would be loss contracts under GAAP," as lacking any factual basis and not identifying the agreements at issue. Indemnity Agreement at 1; *see* MJP ¶ 44. Moreover, Mr. Halinski suggests ADS's affirmative defense is "pretextual" given that it was "sent [on] the last working day before response to the Verified Complaint was due[] and [the claim amount's] size . . . coincidentally matches [ADS's] own breach[.]" MJP ¶ 45; *see* MJP Reply at 5.

[75] MJP Opp'n ¶¶ 19, 21-24 (citing *Reserves Dev. LLC v. R.T. Properties, L.L.C.*, 2011 WL 4639817, at *7 (Del. Super. Ct. Sept. 22, 2011) (stating that while "Delaware courts often enforce contractual pre-suit notice provisions. An overriding truth is that the law does not require a futile act."); *Cornell Glasgow*, 2012 WL 6840625, at *14 (holding an "obligation to comply with the Agreement's notice and cure provision is excused by futility.")).

Regarding the first point, the Indemnity Demand Response "dispute[d] liability in its entirety,[76] and stylized the claim as "lack[ing] substance, bordering on frivolity."[77] Therefore, ADS posits compliance with Section 7.07 "would not have led to agreement or compromise" and should be excused as futile.[78] To its second argument, ADS notes that because Sellers sent the Indemnity Demand Response on February 20, 2025, the SPA's 30-day dispute resolution period expired March 22, 2025.[79] Therefore, to ADS, compliance with the indemnification procedure "would be pointless," because such compliance wouldn't delay the current motion's resolution.[80]

Mr. Halinski says ADS's arguments concerning the "narrow" futility doctrine fail, because Sellers: (1) have "not repudiated the SPA or its indemnification provisions"; and (2) notice was not futile, as evidenced by Sellers' Indemnity Demand Response.[81] Moreover, Mr. Halinski maintains ADS's second argument

---

[76] Indemnity Demand Response at 2.

[77] MJP ¶ 44.

[78] *Reserves Dev.*, 2011 WL 4639817, at *7; *see* MJP Opp'n ¶¶ 19, 22.

[79] *See* MJP Opp'n ¶ 23; SPA § 7.07; Indemnity Demand Response at 1.

[80] MJP Opp'n ¶ 24.

[81] *Id.* at 3-6. Mr. Halinski insists the Indemnity Demand Response "is exactly the conduct contemplated by the SPA," because it "not[ed] specific deficiencies in the last-minute *pro forma* punitive notice, and specifically identifying the information missing from Defendant's punitive notice which would be necessary to evaluate its claims." *Id.* (citing Indemnity Demand Response; SPA § 7.07 ("[i]f the Indemnifying Party has timely disputed its liability with respect to such claim as provided above, the Indemnifying Party and the Indemnified Party shall negotiate in good faith to resolve such dispute.").

over timing—timing of ADS's own making, provides no basis for avoiding the contractual dispute resolution mechanisms.[82]

No doubt, Delaware courts regularly enforce contractual pre-suit dispute resolution provisions.[83] And, "[a] claim is not ripe," unless the parties "first exhaust [the] applicable contractual pre-suit dispute resolution process."[84] Consequently, courts generally "dismiss claims when a party fails to satisfy those contractual obligations."[85]

Yet, courts excuse noncompliance with a pre-litigation dispute resolution provision where it "would be futile in achieving its intended purpose."[86] Performance is futile "only when the defaulting party expressly and unequivocally repudiates the contract or where the actions of the defaulting party have rendered future performance of the contract by the non-defaulting party impractical or impossible."[87] Neither scenario applies here.

---

[82] *Id.* at 5. The Indemnity Demand Reply's statement, "if you want 'additional color' about our client's legal arguments you will receive that information in our clients' opposition to your motion on March 31," shows ADS "do[es] not intend to negotiate in good faith" despite Section 7.07's clear language. Indemnity Demand Reply at 2; MJP Reply at 5.

[83] *See Snow Phipps Group, LLC v. KCAKE Acquisition, Inc.*, 2021 WL 1714202, at *39 (Del. Ch. Apr. 30, 2021).

[84] *Lennox Industries Inc. v. Alliance Compressors LLC*, 2020 WL 4596840, at *3 (Del. Super. Ct. Aug. 10, 2020) (citations omitted).

[85] *Id.* (citations omitted).

[86] *Cornell Glasgow*, 2012 WL 6840625, at *13; *see Reserves Dev.*, 2011 WL 4639817, at *7 ("[t]he law does not require a futile act.").

[87] *Id.*

ADS first protests compliance with Section 7.07 is futile because "Plaintiff has expressly and unequivocally made clear he will not compromise on Defendants' indemnity claims."[88] To support that position, ADS relies on Sellers' characterization of the indemnity claim as "pretextual,"[89] and the fact that Mr. Halinski "disputes liability in its entirety."[90] But, disputing a claim is not repudiation. Instead, "repudiation is an outright refusal by a party to perform a contract or its conditions."[91] There is no evidence Sellers "positive[ly] and unequivocal[ly]" refused to comply with Section 7.07.[92] Indeed, the Indemnity Demand Response evidences Sellers performed the SPA's pre-litigation dispute resolution procedure. Therefore, ADS's first futility argument fails.[93]

ADS also maintains compliance with Section 7.07 is futile because, "the dispute resolution timing would expire before oral argument on Plaintiff's

---

[88] MJP Opp'n ¶¶ 21-22. This position implicates the repudiation-based futility exception.

[89] MJP ¶¶ 44-45.

[90] Indemnity Demand Response.

[91] *Fortis Advisors LLC v. Johnson & Johnson*, 2024 WL 4048060, at *44 (Del. Ch. Sept. 4, 2024) (citing *CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000) (*per curiam*).

[92] *See Frontier Oil Corp. v. Holly Corp.*, 2005 WL 1039027, at *27 (Del. Ch. Apr. 29, 2005) (holding a repudiation must be positive and unequivocal).

[93] Contrary to ADS's assertion, that the parties' pre-litigation discussions did not produce a settlement does not show Sellers repudiated their performance. *See Cornell Glasgow*, 2012 WL 6840625, at *14 (rejecting the argument that the parties' previous discussions made it clear they could not have agreed to a compromise); *Reserves Dev.*, 2011 WL 4639817, at *7 (finding no realistic possibility of compromise, because "[t]he issue had arisen on more than one occasion, the only result being Korotki's continued assurances that everything would be taken care of in due time.").

[m]otion."[94] ADS cites no legal authority suggesting that factually correct statement makes performance futile.[95] "Inconvenience or difficulty of performance is not enough" to render performance impossible or impracticable.[96] That the parties couldn't have completed the SPA's dispute resolution before this motion's hearing does not excuse ADS's non-performance. Put simply, ADS's indemnity claim is unripe and doesn't check the Court's grant of a judgment on the pleadings here.[97]

## B. Section 7.08 prohibits ADS from withholding the Second Intermediate Tax Holdback to satisfy a potential award that might arise from their affirmative defense.

Mr. Halinski contends the affirmative defense doesn't preclude granting his motion, because ADS's possible recovery for a breach of Sections 3.08 and 3.10 is limited to the Indemnity Holdback and representation and warranties insurance policy.[98] ADS acknowledges Section 7.08(a)'s applicability, but insists Purchaser

---

[94] MJP Opp'n ¶¶ 21, 23-24.

[95] *See id.*

[96] *Grynberg v. Burke*, 1981 WL 17034, at *8 (Del. Ch. Aug. 31, 1981). This proposition is especially true here where any delay is attributable to ADS's admittedly last-minute formalization of its recoupment affirmative defense. *See* Hrg. Tr. at 10-11 (admitting ADS only proffered an excuse for its non-payment of the Second Intermediate Tax Holdback "right before the answer was filed in this suit.").

[97] *See Festival Fun Parks, LLC v. MS Leisure Company*, 2023 WL 8714994, at *5-6 (Del. Super. Ct. Dec. 18, 2023) (holding an inadequately pled affirmative defense wouldn't prevent granting judgment on the pleadings).

[98] MJP ¶¶ 46-49 (citing SPA § 7.08(a)).

can withhold the Second Intermediate Tax Distribution "to recoup the Indemnity Holdback Amount" already distributed to Sellers.[99]  Not so.

Even were ADS's position correct—which it is not—recouping the $150,000 Indemnity Holdback Amount doesn't justify withholding the entire $2,735,000 Second Intermediate Tax Holdback.[100]  ADS admits the Court could exercise its equitable powers to order payment of the Second Intermediate Tax Holdback minus $150,000, Purchaser's maximum recoverable indemnity.[101]  More fundamentally, ADS's argument is contrary to the SPA's text.

This Court enforces agreements in which sophisticated parties consent to "a specific contractual remedy."[102]  Section 7.08(a) unambiguously provides ADS's recovery for a breach of representations and warranties "shall be satisfied: (i) first, by recouping such losses from the Indemnity Holdback Amount and (ii) second, solely from the R&W Insurance Policy in accordance with the procedures and

---

[99]  MJP Opp'n ¶¶ 25-27.  Specifically, ADS argues the only way they can comply with Section 7.08 is to "seek to recoup the Indemnity Holdback Amount – $150,000 – from the Sellers." *Id.* ¶¶ 26-27.  In ADS's view, interpreting Section 7.08 to only entitle them to the Indemnity Holdback Amount when they're in possession thereof, is inconsistent with the SPA's text—namely Section 7.01 and the definition of "Indemnity Holdback Amount." *Id.* ¶ 27 ("[t]he SPA defines the Indemnity Holdback Amount simply as '$150,000' without limiting language along the lines of 'while in Purchaser's possession.'"); *see* SPA § 7.01(a)(ii) (stating the SPA's representations and warranties survive for three years post-closing).

[100]  *See* MJP Reply at 7-8 (advancing that argument).

[101]  Hrg. Tr. at 21-24.

[102]  *In re Cellular Telephone Partnership Litigation*, 2021 WL 4438046, at *72 (Del. Ch. Sept. 28, 2021) (citing *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *7 (Del. Ch. July 9, 2002)).

-18-

subject to the limitations set forth therein."[103] Section 7.09 states, "the Parties expressly acknowledge and agree that the sole and exclusive remedy available . . . for any breach of . . . any representation [or] warranty . . . shall be pursuant to the indemnification provisions set forth in [] Article VII."[104] These provisions are clear—once the Indemnity Holdback Amount is exhausted or disbursed, ADS's recovery for a breach of representations and warranties is limited to the R&W Insurance Policy.[105]

As such, even if ADS's affirmative defense is meritorious, it does not permit recovery from the Second Intermediate Tax Holdback. ADS has admitted as much.[106] Accordingly, ADS's affirmative defense does not thwart Sellers' current entitlement to the Second Intermediate Tax Holdback. Because there is no *material* fact in dispute and Sellers are due judgment as a matter of law.

---

[103] SPA § 7.08(a).

[104] *Id.* § 7.09.

[105] ADS's suggestion that this interpretation produces an absurd result because the representations and warranties survive for three years, is unconvincing. *See* MJP Opp'n ¶ 27. "An interpretation is unreasonable if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract." *Manti Hldgs., LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021). There is nothing unreasonable with sophisticated parties agreeing to, over time, change the contractual remedy for a breach of representations and warranties.

[106] Specifically, ADS conceded the Second Intermediate Tax Holdback and Indemnity Holdback Amount are separate "pot[s]" of recoverable indemnity for discrete purposes—namely, the Second Intermediate Tax Holdback indemnifies "tax-related [expenses] chargeable to the [S]eller[s]" whereas the Indemnity Holdback Amount provides indemnification for "any breach of nonfundamental reps and warranties[.]" Hrg. Tr. at 11-14.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Halinski's motion and enters judgment on the pleadings in Sellers' favor.  ADS must now release the Second Intermediate Tax Holdback to Sellers.

The parties shall confer and provide the Court with a final order or judgment no later than 14 days from issuance of this decision.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge*

_____

\*    Sitting by designation of the Chief Justice pursuant to *In re Designation of Actions Filed Pursuant to 8 Del. C. § 111* (Del. Nov. 4, 2024) (THIRD AMENDED ORDER).